[No. 13588.  Department Two.  March 23, 1917.]

*In the Matter of the Estate of* WILLIAM H. COOPER.[1]

EXECUTORS AND ADMINISTRATORS—DISTRIBUTION — CLAIMS — CONTRACT WITH HEIRS—CONSTRUCTION.  A contract whereby an insurance company agreed to perfect title to the property of an estate, in three of the heirs as individuals, who held the right of redemption from an execution sale of the property, in consideration of which the heirs agreed to return advances made and purchase stock in the insurance company, does not give the company any right to participate in the distribution of the estate, on the failure of the heirs to purchase the stock, the contract making no mention of the estate or the administrator; the company's remedy for breach of the contract being solely against the heirs.

Appeal from an order of the superior court for King county, Frater, J., entered February 4, 1916, upon findings in favor of certain assignees to the property of an estate, upon final distribution thereof, tried to the court. Affirmed.

*H. T. Granger*, for appellant.

*Griffin & Griffin*, for respondent.

HOLCOMB, J.—During the pendency of the probate of this estate, Henry H., Edgar H. and Annie Cooper, children of the deceased, entered into a contract with the North Coast Fire Insurance Company, which is as follows:

"This Agreement made and entered into this 27th day of July, 1911, by and between the North Coast Fire Insurance Company, a corporation of the state of Washington, of Seattle, hereinafter called the party of the first part, and Henry H. Cooper, Edgar H. Cooper and Annie Cooper, hereinafter called the parties of the second part,

"Witnesseth that:

"(1)  The party of the first part agrees to advance, for the use and benefit of the parties of the second part, whatever sum shall be necessary to redeem from R. D. Shelton the following described property, to-wit:

[1]Reported in 163 Pac. 935.

"The south half (½) of the northwest quarter (¼) of the north half (½) of the southwest quarter (¼), section ten (10), township twenty (20), north of range six (6) east W. M., which said property was heretofore and to wit, on the 30th day of July, 1910, sold to the said R. D. Shelton at an execution sale. The party of the first part further agrees to advance, for the use and benefit of the parties of the second part a sum not to exceed five hundred dollars ($500) for the costs of any and all litigation necessary to be maintained by the parties of the first or second parts to perfect the title of the parties of the second part in said property hereinbefore described.

"(2) The parties of the second part agree to and with the party of the first part to repay the said sums to the party of the first part on or before eighteen months after date, with interest at eight (8) per cent per annum, or if the title to the above described property become good and sufficient in the parties of the second part prior to the expiration of the said time, then at such time the parties of the second part will repay said sums with interest to such date from the date hereof at the rate of eight (8) per cent.

"(3) The party of the first part has this day issued to the parties of the second part ten (10) shares of its capital stock, for which the parties of the second part agree to pay the party of the first part the sum of two thousand dollars ($2,000) at such time as the title to the above described property shall become good and sufficient in the parties of the second part. Until such time as such title shall become good and sufficient as aforesaid, the parties of the second part shall not be entitled to receive any dividends on said stock. After said title shall become good and sufficient in the parties of the second part, then the said sum of two thousand dollars ($2,000) shall bear interest at the rate of eight per cent until paid. Said certificate of stock shall remain in the possession of the party of the first part until payment has been made by the parties of the second part.

"(4) The parties of the second part have this day made and executed unto the party of the first part their quitclaim deed to the property hereinbefore mentioned and described, which said quitclaim deed shall be retained by the party of the first part as security only for the payment to the party of the first part by the parties of the second part of the sums

and in the manner hereinbefore mentioned.  Upon payment of such sums and in the manner hereinbefore mentioned, the parties of the second part shall receive back from the party of the first part the said quitclaim deed and shall be entitled to receive back from the party of the first part any and all reconveyances or instruments quitclaiming and conveying to the parties of the second part such interest as the party of the first part may have in such property.

"(5)   The parties of the second part further agree with the party of the first part, in the event the title to the said property is not perfected in them, to subrogate the party of the first part to any and all rights against said property, and the owners thereof to recover from them any and all sums advanced by the party of the first part as hereinbefore mentioned."

At that time, it was known to the Coopers and the administrator of the deceased that the title to the real estate left by the deceased and described in the contract was considerably clouded.  In connection with the contract, the Coopers named therein made a quitclaim deed of the real estate to the North Coast Fire Insurance Company for the purpose of securing the contract.  Subsequently the North Coast company advanced moneys in pursuance of the contract, aggregating $2,885.47, which included interest and the $500 which was specified in the contract to be advanced by the North Coast company for costs of any and all litigation necessary to be maintained by the parties of the first or second parts to perfect the title of the parties of the second part in the property therein described.  Thereafter the real estate was sold upon the petition of W. L. Cummings, the administrator, and at the request of appellant, for the purpose of raising money with which to pay the expenses of administration and the debts of the estate.  Subsequently the contract was transferred by the North Coast company to the Pacific States Fire Insurance Company, and a quitclaim deed to the real estate involved therein was made by the North Coast company to the Pacific States company.  The North Coast Fire Insurance Company went out of business, reinsured its policies

with the Pacific States Fire Insurance Company, and assigned its claims to that company. After the sale of the real estate, the Cooper children assigned all their interest in and to the estate to C. E. Iten and Arnold Jones. All moneys advanced by the North Coast company were repaid to it in full, with interest at eight per cent, out of the proceeds of the sale of the real estate.

Rebecca Leggett claimed an interest in the funds of the estate and, on the trial, it was agreed that she should be protected as to her interest. The only question that then remained was as to the disposition and distribution of the funds in the hands of the administrator after the settlement with Rebecca Leggett. The Pacific States Fire Insurance Company, as assignee of the North Coast Fire Insurance Company, contended that the Cooper heirs were indebted to it in the sum of $2,000 for stock in the North Coast Fire Insurance Company, referred to in the contract heretofore set forth. Iten and Jones, assignees of the Cooper children, contended that the North Coast Fire Insurance Company or its assignee had not complied with the terms of the contract, and their contention was sustained by the trial court, who entered an order of distribution by which the funds remaining in the hands of the administrator, after the settlement of the Rebecca Leggett claim, were distributed to Iten and Jones, as assignees of the Coopers. From that order of distribution, the Pacific States Fire Insurance Company appeals.

The appellant contends that the contract set forth herein is one for construction as a contract to quiet title of the land involved in the estate of William H. Cooper, deceased, and that thereupon it should be determined that the North Coast Fire Insurance Company complied with its contract, and that the purchase price of the stock of the North Coast Fire Insurance Company, or $2,000, should be distributed to the appellant. It is contended that that was the understanding of the parties at the time of making the contract—the construction they placed upon it—and that it is plain that the

*Cooper estate* was to be put in such condition that this real estate could·be sold and the net proceeds go to these heirs; that the North Coast company was to be benefited by the sale of $2,000 from its stock.

From the first paragraph of the contract it appears that the real estate had been sold at sheriff's sale to one R. D. Shelton, and it was agreed that the North Coast Fire Insurance Company should advance certain moneys for the use and benefit of the parties of the second part, who were designated in the contract and were Henry H. Cooper, Edgar H. Cooper, and Annie Cooper, individually, and in their own rights. It is further agreed in that paragraph of the contract that the insurance company would advance, for the use and benefit of the parties of the second part, a sum not to exceed $500, for the costs of any and all litigation necessary to be maintained· by the parties of the first or second part to perfect the title of the parties of the second part in the property.

It is certain that either the children of William H. Cooper, as his heirs, or his estate had the right to redeem from execution sale within the time specified by law, and it may be assumed that this contract was one for the benefit of the heirs. And it is true, also, that the legal title to the real estate, under our statutes, vests immediately in the heirs at law of the deceased. But it is shown in the record that the real estate described was acquired by William H. Cooper while a married man and in community with his wife, Elizabeth Cooper. Elizabeth Cooper, therefore, had a community interest in the real estate which had never been divested. She had not been heard from for several years and, about two years after the execution of this contract, she was judicially declared dead and her interest in the estate put in probate.

The third paragraph of the contract provided for the sale and issuance to the Cooper children of ten shares of the capital stock of the North Coast Fire Insurance Company for the purchase price of $2,000, to be delivered to

them at such time as the title to the real estate described in the contract should become "good and sufficient in the parties of the second part;" and until such time, the parties of the second part should not be entitled to receive any dividends on the stock, and the stock should remain in the possession of the parties of the first part until payment therefor.

The fifth paragraph of the contract provided that, in the event the title to the real estate was not perfected in the parties of the second part, the party of the first part should be subrogated to any and all rights against the real estate and the owners thereof, to recover from them any and all sums advanced by it as contemplated in the contract.

It seems to us this contract needs no construction as to the intent of the parties. It was clearly and positively agreed by the contract that the insurance company should perfect the title to the real estate in the parties of the second part, Henry H. Cooper, Edgar H. Cooper, and Annie Cooper, individually, and irrespective of any rights they had in the estate. Not once is the estate of Cooper mentioned, and not once are the Coopers referred to or described as heirs. The contract repeatedly states that the title to the real estate *is to be perfected in the parties of the second part*. By the second paragraph of the contract, the parties of the second part agreed to repay all sums advanced by the insurance company on or before eighteen months after date, with interest at eight per cent per annum; or, if title to the real estate should become good and sufficient in them prior to the expiration of the eighteen months, then they would repay such sums, with interest to such date, immediately.

The insurance company advanced the moneys necessary to redeem the real estate from the execution sale, including costs and interest up to the time of redemption, and advanced the further sum of $500 to the administrator. This sum of $500, however, was never used to perfect the title

of the real estate in the Cooper children, but was used by the administrator to repay him for moneys previously advanced in the administration of the estate, and costs in another proceeding incurred before the death of William H. Cooper, and other expenses of administration.

It must be observed that the contract involved herein was not made between the administrator of the estate of Cooper and the insurance company, but was made between the insurance company and the three individuals who executed it. It cannot be contended, therefore, that it was a contract for and on behalf of the estate and for the benefit of the estate; but it was a contract purely and exclusively for the benefit of. the parties who signed it. No one could have enforced the contract against the insurance company except the individuals who executed it, and if the insurance company performed its contract, its remedy was against those individuals and not the estate. Neither the North Coast Fire Insurance Company nor the appellant, as its assignee, was an heir or a creditor of the deceased, and neither is entitled to participate in the decree of distribution.

The decree of the lower court is affirmed.

ELLIS, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.